*King v. Davis*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of March, two thousand twenty-six.

PRESENT:
> **REENA RAGGI,**
> **ALISON J. NATHAN,**
> > *Circuit Judges,*
> **JESSE M. FURMAN,**
> > *District Judge.*\*

_____

**Brian King,**

> *Plaintiff-Appellant,*

> v.                                                                 **No. 25-966**

**Stephen C. Davis III, Police Officer, City of Potsdam Police Department,** *individually and officially*, **Peter G.**

_____

\* Judge Jesse M. Furman, of the United States District Court for the Southern District of New York, sitting by designation.

Lasala, Police Officer, City of Potsdam Police Department, *individually and officially*, Corbin Gates-Shult, Police Officer, City of Potsdam Police Department, *individually and officially*, Village of Potsdam, Officers John Doe 1-5, Potsdam Police Department,

      *Defendants-Appellees*,

Ryan Robinson, Police Officer, City of Potsdam Police Department,

      *Defendant.*[†]

_____

FOR PLAINTIFF-APPELLANT:      WOODRUFF LEE CARROLL, Woodruff Lee Carroll P.C., Syracuse, NY.

FOR DEFENDANTS-APPELLEES:      APRIL J. LAWS, Olivia G. Reinhardt, Johnson & Laws, LLC, Clifton Park, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Scullin, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is

---

[†] The Clerk of the Court is respectfully directed to amend the caption.

**AFFIRMED in part, VACATED in part, and REMANDED**.

Plaintiff-Appellant Brian King appeals a March 24, 2025 order of the United States District Court for the Northern District of New York (Scullin, *J.*) entering summary judgment for defendants, and a June 4, 2025 order of that court imposing a $1,000 sanction on defense counsel. Plaintiff argues that there exists a material dispute of fact as to whether officers used excessive force or acted negligently when they removed him from his vehicle in order to arrest him for driving while intoxicated. He also argues that his counsel's repeated violation of the district court's orders and failure to file properly formatted briefs with appropriate citations did not merit sanctions. We conclude that the district court erred in dismissing King's negligence claim and vacate and remand for further proceedings. We otherwise affirm.

We review the district court's entry of summary judgment *de novo*, construing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor. *See Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 752 (2d Cir. 2023). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to

3

which we refer only as necessary to explain our decision.

\*     \*     \*

The district court entered summary judgment as to Plaintiff's excessive force claims pursuant to 42 U.S.C. § 1983, along with his state battery and negligence claims. While Plaintiff appealed with respect to all three claims, his reply brief purports to "withdraw[]" his excessive force claim, which he characterizes as the "sole basis for jurisdiction in federal court[.]" Appellant's Reply Br. at 15.[1] Plaintiff argues that, as a result, "everything else is moot," and that "[t]he case should be remanded to state court." Appellant's Reply Br. at 15. To the extent that Plaintiff is trying to amend the complaint to remove his federal claims, thereby depriving us of subject matter jurisdiction, he would have needed to do so before the district court. *See* Fed. R. Civ. P. 15(a)(2) (governing amendments without consent). He did not do so. If Plaintiff instead means to withdraw his *appeal* of his federal claims, doing so would not affect this Court's jurisdiction, nor would it

---

[1] On March 13, 2026, Carroll filed a letter claiming that he had "confused briefs on [his] computer and filed an earlier draft" as a result of technical problems experienced by the printing company he used. Docket No. 46 at 1. He attached a new version of his reply brief, identifying it as "[a] copy of the correct but unfiled brief." *Id.* We construe the letter as a motion to file a corrected brief and deny it as untimely.

4

upset the district court's entry of summary judgment as to those claims.     In any event, because the scope of Plaintiff's intended withdrawal is unclear based on his counsel's briefs and oral argument, we address the merits of Plaintiff's federal claims.

**A. Section 1983**

"To establish a [§ 1983] claim of excessive force, a plaintiff must show that the force used by the officer was, in light of the facts and circumstances confronting him, objectively unreasonable under Fourth Amendment standards." *Davis v. Rodriguez*, 364 F.3d 424, 431 (2d Cir. 2004) (quotation marks omitted). "Because 'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it,' determining whether the amount of force an officer used is reasonable 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Relevant factors include "(1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat

5

to the safety of the officers or others,' and (3) 'whether the suspect is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396) (alteration accepted). "The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit." *Sullivan v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir. 2000). The analysis must be undertaken without regard to subjective intent or "'the 20/20 vision of hindsight.'" *Cugini*, 941 F.3d at 612 (quoting *Graham*, 490 U.S. at 396).

The district court was correct that Plaintiff has identified no material dispute of fact concerning his § 1983 claim. The arresting officers' body-worn camera videos reveal that Plaintiff was visibly intoxicated when officers approached his car, repeatedly refused to answer questions or cooperate with directives, and reached his hand into his jacket to retrieve an unknown object when officers attempted to remove him from his vehicle. All three *Graham* factors therefore support the reasonableness of the force used. Most notably, the officers reasonably suspected a threat to their safety when Plaintiff reached into his jacket and did so again even after being instructed not to do so.

6

Plaintiff maintains that he was "preparing to leave the car," "calling to get somebody to pick up the car," and "compl[ying]" with officers' directives. *See* Appellant's Br. at 16. But that version of events is "blatantly contradicted" by the video evidence. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Plaintiff refused multiple commands to leave the car and reached into his jacket pocket even after instructed not to do so. Plaintiff may have been reaching for his phone to call someone, but the officers would not have known that and were not required to assume that. Accordingly, "no reasonable jury could believe" Plaintiff's characterization of the facts, and the district court was not obliged to "adopt [it] for purposes of ruling on [his] motion for summary judgment." *Scott*, 550 U.S. at 380.

To be sure, Plaintiff is correct that both of his hands were visible at the precise moment the officers pulled him from his car, and to the extent that the district court found otherwise, that finding was clearly erroneous. But Plaintiff had already reached his hand into his pocket at that point and had begun to do so again after being told to stop. Officers therefore reasonably suspected that Plaintiff may have been carrying a weapon and acted reasonably by executing the

7

arrest in the manner they did so as to immobilize Plaintiff and prevent him from again reaching for the unknown object. Given that motor-vehicle stops "are especially fraught with danger to police officers," *Michigan v. Long*, 463 U.S. 1032, 1047 (1983), we will not second-guess the "split-second judgments" they made in these circumstances, *Graham*, 490 U.S. at 396.[2]

**B. State-Law Claims**

Plaintiff raises only state-law negligence and battery claims in his opening brief, so we deem his other state-law claims abandoned. As Plaintiff acknowledges, the same legal analysis applies to his state-law battery claim as his federal excessive force claim, and summary judgment was therefore appropriate as to his battery claim for the reasons explained above. *See Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021).

By contrast, we conclude that the district court erred in granting summary judgment as to Plaintiff's state-law negligence claim. The district court, citing

---

[2] In answering a question at oral argument, Defendants' counsel stated that if Plaintiff's hands were visible at the precise moment the officers pulled him from his car, summary judgment would not have been appropriate. We are not bound by that concession because the issue is one of law. *See, e.g.*, *Elias Bochner, 287 7th Ave. Realty LLC v. City of New York*, 118 F.4th 505, 524 n.12 (2d Cir. 2024).

other Eastern District decisions, reasoned that Plaintiff's allegations were "only consistent with intentional or reckless conduct," and that the defendants could therefore "only be liable for intentional torts, not negligence." App'x at 931 (quoting *Benbow v. City of New York*, No. 17-CV-6457, 2024 WL 5165073, at *11 (E.D.N.Y. Dec. 19, 2024)). If the district court meant to suggest that Plaintiff's negligence and intentional tort claims are inconsistent, Plaintiff is nonetheless allowed to pursue alternative claims, even at the summary judgment stage. *See* Fed. R. Civ. P. 8(d); *see also*, *e.g.*, *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994) ("The flexibility afforded by Rule 8(e)(2) is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims."). If the district court instead meant that Plaintiff's negligence claim does not lie because the complaint alleges only intentional conduct, that rule is unsettled as a matter of New York law. *Compare Johnson v. City of New York*, 50 N.Y.S.3d 461, 463 (2d Dep't 2017) ("New York does not recognize a cause of action to recover for negligent assault."), *with McCummings v. New York City Transit Auth.*, 81 N.Y.2d 923, 925 (1993) (upholding a jury verdict of common-law negligence in a case involving a police shooting).

9

While it may be that, unlike in *McCummings*, no reasonable jury could find negligence here, the applicability of *McCummings* "turns in part on factual questions not addressed by the district court" and we therefore "leave it to the district court to pass on the issue in the first instance." *Brocklesby Transp., A Div. of Kingsway Transports, Ltd. v. E. States Escort Servs.*, 904 F.2d 131, 134 (2d Cir. 1990).

That said, we have repeatedly discouraged district courts from "retain[ing] jurisdiction over state-law claims raising unsettled questions of law following dismissal of all original-jurisdiction claims." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 124 (2d Cir. 2006). That is true even after discovery and summary judgment. *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 302, 308 (2d Cir. 2003). On remand, the district court should therefore first consider whether "judicial economy, convenience, fairness, and comity" favor retention of supplemental jurisdiction over Plaintiff's negligence claims. *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1191 (2d Cir. 1996).

**C. Sanctions**

Finally, reviewing for abuse of discretion, *see Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018), we agree with the district court that Mr.

10

Carroll's conduct here warranted a $1,000 sanction.[3]   Ordinarily, a federal court "may exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."   *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quotation marks omitted).   However, an explicit finding of bad faith is only required to sanction conduct "undertaken for the client's benefit."   *United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000). "[S]anctions may be justified absent a finding of bad faith" if misconduct involves counsel's "negligent or reckless failure to perform his or her responsibility as an officer of the court," including if counsel violates court orders.   *Id.* at 41.

Here, the district court acted squarely within its discretion in sanctioning Carroll for his reckless failure to practice with a minimal level of competence, as well as for his repeated noncompliance with the court's rules and orders. Moreover, while bad faith is not required, we agree with the district court that Carroll's conduct was egregious enough to warrant such an inference.   Carroll's filings lack proper citations, often lapse into incoherence, and fail to respect the

---

[3] Because the district court here acted as "accuser, fact finder and sentencing judge all in one, . . . our review is more exacting than under the ordinary abuse-of-discretion standard."   *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 113–14 (2d Cir. 2009) (quotation marks omitted).

most basic dictates of grammar and spelling. *See, e.g.*, App'x at 840 (citing to "Memorandum _____"); App'x at 841 (citing to "Ex ___"); App'x at 742 (three placeholder citations on one page); App'x at 823 ("esculation Davis clearly was descultating the situation at first the esculated whenhe removed the Plaintiff"). Carroll attempts to excuse these errors by claiming that he was suffering from "psoriasis and a tooth problem" and was on "strong medications" at the time he filed his surreply brief in the district court. Appellant's Br. at 38. But Carroll has consistently committed the same misconduct throughout this litigation, and continues to do so even before this Court. *See, e.g., id.* at 5 (citing to "bizarrebizarre"). We also note that it was Carroll's professional responsibility to withdraw from the representation if his physical or mental condition materially impaired his competence. *See* Am. Bar Ass'n Model Rules of Pro. Conduct 1.16(a)(2). What Carroll actually did—knowingly ignoring court orders and declining to proofread his work—warrants sanctions.

Indeed, given the record in this case, including on appeal, we refer Carroll to the Court's Grievance Panel pursuant to Local Rule 46.2 for further investigation, and for consideration of a referral to the Committee on Admissions

12

and Grievances. See 2d Cir. R. 46.2. The briefs that he filed in this court (1) are replete with typographic and grammatical errors; (2) include large segments of copied and pasted text (including headnotes that he apparently forgot to delete); (3) contain numerous incorrect or unintelligible citations; and (4) fail to comply with the formatting rules contained in Federal Rule of Appellate Procedure 32.[4] Making matters worse, Carroll has engaged in at least some of this precise conduct before (namely, copying and pasting large segments of text, replete with headnotes)—and was explicitly warned by a member of this Court never to do so again. *See* App'x at 944-45 (citing Oral Argument at 07:45–09:01, *Rose v. City of Utica*, 777 F. App'x 575 (2d Cir. 2019) (No. 18-1491)).

\*       \*       \*

We have considered Plaintiff's remaining arguments and find them to be

---

[4] In his March 13, 2026 letter, Carroll now claims that "[a]t the time of oral argument I was unaware of the error and did not expect any of the issues to arise." Docket No. 46 at 2. He also claims that the correct brief "did not have the word bizarre in it at all and complied with court rules." But the "copy of the correct but unfiled brief" that Carroll attached to his March 13 letter is in fact an unaltered copy of the *reply* brief he actually filed. Obviously that does nothing to address the errors in Carroll's *opening* brief that the panel identified at oral argument. Furthermore, Carroll's claim that he was unaware of his briefing errors until oral argument is difficult to accept since Appellees specifically identified those errors in their opposition brief. *See* Appellee's Br. at 28 n.15. Finally, the letter is hard to reconcile with representations he made to the court during oral argument.

13

without merit.  Accordingly, we **AFFIRM** the judgment of the district court in part, **VACATE** in part, and **REMAND** the case for further proceedings consistent with this Summary Order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court